UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| ROBERT P. DILLAPLAIN, | : | Case No. 3:13-cv-104 |
| Plaintiff, | : | Judge Timothy S. Black |
| vs. | : | |
| XENIA COMMUNITY SCHOOLS BOARD OF EDUCATION, *et al.*, | : | |
| Defendants. | : | |

**DECISION AND ENTRY
GRANTING DEFENDANTS' MOTION TO DISMISS (Doc. 7)**

This case is before the Court on Defendants' Motion to Dismiss. (Doc. 7).[1] Plaintiff filed a Memorandum in Opposition to Defendants' Motion to Dismiss. (Doc. 8). Defendants filed a Reply Memorandum. (Doc. 9). Defendants' Motion to Dismiss is now ripe for decision by the Court.

## I. FACTUAL ALLEGATIONS

For purposes of this motion to dismiss, the Court must: (1) view the Complaint in the light most favorable to Plaintiff, and (2) take all well-pleaded factual allegations as true. *Tackett v. M&G Polymers*, 561 F.3d 478, 488 (6th Cir. 2009); *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009).

---

[1] Defendants initially filed a Motion to Dismiss the original Complaint. (Doc. 5). Thereafter, Plaintiff filed an Amended Complaint pursuant to Fed. R. Civ. P. 15(a)(1)(B). An amended pleading supersedes an original pleading, and because Defendants' first Motion to Dismiss (Doc. 5) is directed to the original Complaint, that Motion is moot. *See Perkins v. Sun Chemical Corp.,* No. 1:10cv810, 2011 WL 1403069, at *2 (S.D. Ohio Apr. 12, 2011). The Clerk is instructed to **TERMINATE** Defendants' first Motion to Dismiss (Doc. 5) as moot.

Defendant Xenia Community Schools Board of Education ("XBOE") is the governing body for the Xenia Community Schools ("XCS").  Defendants Steven Alex, Lee Rose, Barbara Stafford and William Spahr all serve as elected members of the XBOE.  Plaintiff Robert P. Dillaplain, M.D. ("Dillaplain") also serves as an elected member of the XBOE, having served in that capacity for nearly twenty years.  Dillaplain is also a licensed physician in obstetrics and gynecology, having practiced medicine for more than thirty-six years.

In spring 2010, while Dillaplain served as the President of the XBOE, Deborah Piotrowski ("Piotrowski") was selected as the new superintendent of the Xenia Community Schools.  At that time, Dillaplain was a vocal supporter of Piotrowski.  By the end of January 2011, however, Dillaplain began publicly questioning certain spending reductions proposed by Piotrowski and began making a number of requests to school administrators for documents and information.  Dillaplain's requests for information were not welcomed by Piotrowski.

In November 2012, Dillaplain requested information from school administrators regarding an upcoming levy and certain unusual expenditures, including a substantial increase in legal fees incurred by the school district.  These requests were met with resistance by the school administrators.  In January 2013, the new XBOE President, Defendant Alex, directed school administrators that they were not obligated to respond to requests for information by a single XBOE member if they deemed the requests to be onerous.  Thereafter, Piotrowski directed the treasurer not to provide Dillaplain with

2

records that Dillaplain requested.  Dillaplain subsequently obtained the same records by filing a citizen's public records request pursuant to Ohio Rev. Code § 149.43.

In the January 14, 2013, Board meeting, Dillaplain publicly congratulated Piotrowski on the fact that she was applying for superintendent jobs in other school districts.  Piotrowski perceived Dillaplain's statements as a slight.  On February 6, 2013, Defendant Stafford complained that the minutes for the January 14, 2013 meeting were incomplete, stating that, "Dr. Dillaplain's congratulatory remarks to [Piotrowski] on her success in being considered for positions in other districts and his expressions of concern that she may be neglecting her duties in her current position, are not included."

In a XBOE meeting on February 11, 2013, Dillaplain questioned the extraordinary increase in legal expenses for the school district and asked that XBOE members be provided with relevant records.  In that same meeting, the XBOE retired to executive session to discuss a complaint by other XBOE members against Dillaplain.  Dillaplain made a specific, written request during the public portion of the XBOE meeting that the complaint against him be discussed in public pursuant to XBOE Policy, which states that:

> The Board and its committees and subcommittees reserve the right to meet privately in executive session solely to discuss one (1) or more of the following issues exempted from public sessions:
>
> investigation of charges or complaints against a public employee, official, licensee or student unless such employee, official, licensee or student requests a public meeting; except that consideration of the discipline of a Board member for conducted related to the performance of his/her duties or his/her removal from office shall not be held in executive session.

3

The XBOE did not take action on Dillaplain's request for a public discussion of the complaints against him while in the public session.  Instead, the Board members waited until they had moved into executive session to deny his request for an open meeting.  The XBOE then proceeded to discuss and consider the complaint against Dillaplain in executive session. No written complaint was ever produced for discussion.

During the executive session, XBOE members were hostile to Dillaplain. Dillaplain alleges that XBOE members were yelling, calling him names, and making implied threats towards him.  Dillaplain also alleges that XBOE members falsely accused him of being hostile towards women.  While in the executive session, the XBOE discussed matters that had not been specified as one of the purposes for executive session and specifically directed its general counsel to draft a resolution of censure against Dillaplain.

The resolution for public censure, having been prepared by the Board's general counsel pursuant to the XBOE action on February 28, 2013, was submitted in draft to XBOE members before the March 11, 2013 XBOE meeting.  On March 11, 2013, the XBOE voted on the resolution for public censure that had been pre-prepared by its general counsel.  The XBOE voted on the resolution without presenting evidence to the public regarding the statements about Dillaplain.  The XBOE voted and passed the resolution just as it had been drafted in advance of the XBOE meeting.

The resolution sets forth the opinion of other XBOE members that conduct and statements they observed by Dillaplain were "demeaning, insulting, abusive, veiled

4

threats, discriminatory and inappropriate for a member of the Board." Based on those observations and opinions, those members expressed their beliefs in that regard and publicly censured Dillaplain for the conduct they observed.

Dillaplain filed this action alleging that Defendants violated his First Amendment right to free speech and his Fifth and Fourteenth Amendment rights to due process. Dillaplain also asserts state claims of defamation, false light, invasion of privacy, and alleges violations of Ohio's Open Meetings Act, Ohio Rev. Code § 121.22. In addition, Dillaplain seeks a declaration from the Court that Defendants retaliated against him in violation of his First Amendment rights and that certain actions by the XBOE violated XBOE policy and Ohio's Open Meetings Act.

## II.  STANDARD OF REVIEW

Defendants move to dismiss all claims asserted by Dillaplain pursuant to Fed. R. Civ. P. 12(b)(6). A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) operates to test the sufficiency of the complaint and permits dismissal of a complaint for "failure to state a claim upon which relief can be granted." To show grounds for relief, Fed. R. Civ. P. 8(a) requires that the complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief."

While Fed. R. Civ. P. 8 "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). Pleadings offering mere "'labels and conclusions' or 'a formulaic recitation

of the elements of a cause of action will not do." *Id.* (citing *Twombly*, 550 U.S. at 555). In fact, in determining a motion to dismiss, "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation[.]'" *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265 (1986). Further, "[f]actual allegations must be enough to raise a right to relief above the speculative level[.]" *Id.*

Accordingly, in order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678. A claim is plausible where "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Plausibility "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (citing Fed. Rule Civ. Proc. 8(a)(2)).

### III.  ANALYSIS

Dillaplain asserts federal civil rights claims under 42 U.S.C. § 1983 alleging that Defendants retaliated against him for engaging in his right to speech under the First Amendment and deprived him of his procedural and substantive due process rights under the Fifth and Fourteenth Amendments. In their Motion to Dismiss, Defendants assert that Dillaplain's federal claims must be dismissed for two reasons: (1) because Dillaplain asserts no violation of any right provided to him by federal law; and (2) qualified

immunity protects Defendants from suit and liability.  Defendants also argue that the Court should decline to exercise supplemental jurisdiction over Dillaplain's state claims.

"To prevail on a § 1983 claim, a plaintiff must establish that a person acting under color of state law deprived the plaintiff of a right secured by the Constitution or laws of the United States."  *Green v. Throckmorton*, 681 F.3d 853, 859-60 (6th Cir. 2012) (citing *Waters v. City of Morristown, Tenn.*, 242 F.3d 353 (6th Cir. 2001)); *see also Trapp v. Kimpel*, No. 3:13-cv-18, 2013 WL 4510570, *3 (S.D. Ohio Aug. 23, 2013).  "Qualified immunity shields individual government officials from liability 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Hensley v. Gassman*, 693 F.3d 681, 687 (6th Cir. 2012) (citing *Harlow v. Fitzgerald*, 457 U.S. 800 (1982)).

For purposes of qualified immunity, a law is clearly established where it "is clear in regard to the official's particular actions in the particular situation."  *Id.* (citing *Long v. Norris*, 929 F.2d 1111 (6th Cir. 1991)).  "'The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing' violates federal law."  *Id.* (citing *Anderson v. Creighton*, 483 U.S. 635 (1987)).

In that regard, "'pre-existing law must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what defendant is doing violates federal law in the circumstances.'"  *Saylor v. Bd of Educ. Of Harlan Cnty, Ky.*, 118 F.3d 507, 515-16 (6th Cir. 1997) (quoting *Lassiter v. Alabama A&M Univ., Bd. of Trustees*, 28 F.3d 1146 (11th

Cir. 1994)); *see also Hensley*, 693 F.3d at 687. In determining whether qualified immunity applies to the circumstances presented, courts employ a two-step analysis by considering: "(1) whether the defendant violated a constitutional right; and (2) whether that right was clearly established." *Hensley*, 693 F.3d at 687 (citing *Aldini v. Johnson*, 609 F.3d 858, 863 (6th Cir. 2010)).

A.

Plaintiff first asserts a First Amendment retaliation claim arguing that the public censure set forth in the XBOE resolution was in retaliation for engaging in his right of free speech pursuant to the First Amendment. To succeed on such a claim, Dillaplain must show that: "(1) [he] engaged in constitutionally protected conduct; (2) an adverse action was taken against [him] that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) the adverse action was motivated at least in part by [his] protected conduct." *Perkins v. Twp. of Clayton*, 411 F. App'x 810, 814 (6th Cir. 2011) (citing *Mezibov v. Allen*, 411 F.3d 712 (6th Cir. 2005); *Thaddeus–X v. Blatter*, 175 F.3d 378 (6th Cir. 1999) (en banc); *Bloch v. Ribar*, 156 F.3d 673 (6th Cir. 1998)). Here, the second element is challenged by Defendants.

While the "harassment necessary to rise to a level sufficient to deter an individual is 'not extreme[,]'" typical citizens seeking to establish a retaliation claim "must still establish some relatively strong action." *Id.* (citing *Holzemer v. City of Memphis*, 621 F.3d 512 (6th Cir. 2010); *Paige v. Coyner*, 614 F.3d 273 (6th Cir. 2010)). Further, "[t]he objective inquiry into whether the actions taken against an individual rise to the level of

8

an adverse action is highly dependent on context," and persons such as public employees "'might have to endure more than the average citizen.'" *Id.* (citing *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718 (6th Cir. 2010); *Holzemer*, 621 F.3d at 523-24.

In fact, courts generally believe that "[a] retaliation claim is not the proper vehicle for the resolution of quotidian disputes among elected officials." *Zimmerlink v. Zapotsky*, --- F. App'x ---, 2013 WL 4873460, *4 (3rd Cir. Sept. 13, 2013). "Public officials may need to have thicker skin than the ordinary citizen when it comes to attacks on their views." *Mattox v. City of Forest Park*, 183 F.3d 515, 522 (6th Cir. 1999). Accordingly, public officials "must tolerate more significant actions taken in response to [their] exercise of First Amendment rights than an average citizen would before the actions are considered adverse." *Perkins*, 411 F. App'x at 816.

Here, the resolution sets forth the opinion of other XBOE members who believed that conduct and statements they observed by Dillaplain were "demeaning, insulting, abusive, veiled threats, discriminatory and inappropriate for a member of the Board." (Doc. 6-4, PAGEID 67-68). Based on those observations and opinions, the Board passed a resolution expressing their opinions in that regard and publicly censuring Dillaplain for the conduct board members had observed. (*Id.*)

The Board's speech in expressing its opinion and publicly censuring Dillaplain is not conduct arising to a level that would deter a person of ordinary firmness from continuing to engage protected speech, at least with regard to a public official engaged in the political process. *See Westfall v. City of Crescent City*, No. CV 10-5222 NJV, 2011

WL 4024663, *4 (N.D. Cal. Sept. 9, 2011) (concluding that a public censure against a public official stating "the opinion of other Council members that Plaintiff violated the Code of Ethics" did not state a claim for First Amendment retaliation "[a]t least in the political arena"). In fact, the Board's speech may, itself, be protected speech under the First Amendment. *Id.* (citing *Blair v. Bethel School Dist.*, 608 F.3d 540 (9th Cir. 2010)).

Accordingly, based on the foregoing, the Court concludes that the Complaint fails to state an actionable First Amendment Retaliation claim, and therefore, Count One must be dismissed, as well as that portion of Count Four seeking a declaration that Defendants retaliated against Dillaplain in violation of his First Amendment rights.

Even assuming the Complaint adequately alleges a violation of Dillaplain's First Amendment rights, Defendants would be entitled to qualified immunity because the circumstances alleged could not plausibly compel a conclusion that any reasonable government agent would conclude that the actions alleged violate federal law within the political arena. Accordingly, for all of the foregoing reasons, Dillaplain's First Amendment Claims must be **DISMISSED**.

B.

To prevail on a procedural due process claim under 42 U.S.C. § 1983, Dillaplain must successfully allege facts demonstrating that he possesses "a life, liberty or property interest protected by the Due Process Clause of the Fourteenth Amendment to the United States Constitution," that Defendants "deprived of this protected interest within the meaning of the Due Process Clause, and" that Defendants failed to provide "adequate

procedural rights prior to depriving [him] of [his] protected interest." *Dubuc v. Township of Green Oak*, 406 F. App'x 983, 987 (6th Cir. 2011) (citing *Hahn v. Star Bank*, 190 F.3d 708, 716 (6th Cir.1999)).

Here, Defendants argue that Dillaplain fails to allege deprivation of a protected interest. Dillaplain alleges that the resolution impaired his ability to participate in the political process, impaired his ability to represent his constituents and impaired his ability to earn a living as a physician. With regard to this last alleged deprivation, attachments to Dillaplain's complaint establish that he does not currently practice medicine, but that he "may, in the near future, choose to re-enter the practice of medicine." (Doc. 6-3, PAGEID 65).

Courts conclude that "the 'unlawful denial by state action of a right to state political office is not a denial of a right of property or liberty secured by the due process clause.'" *Wilson v. Birnberg*, 667 F.3d 591, 597 (5th Cir. 2012) (citing *Snowden v. Hughes*, 321 U.S. 1 (1944)); *see also LaPointe v. Winchester Bd. Of Educ.*, 366 F. App'x 256, 257-58 (2nd Cir. 2010); *Kulak v. City of Birmingham*, 139 Fed. Appx. 694 (6th Cir. 2005). "'[P]ublic offices are mere agencies or trusts, and not property as such' and . . . 'the nature of the relation of a public officer to the public is inconsistent with either a property or a contract right.'" *Id*. (citing *Taylor and Marshall v. Beckham*, 178 U.S. 548, 577, 20 S.Ct. 890 (1900); *Snowden,* 321 U.S. at 7). Ohio courts conclude the same. *Greene v. Cuyahoga Cnty.*, 195 Ohio App.3d 768, 961 N.E.2d 1171, 1178 -79 (Ohio

App. 2011) (stating that a "county office is a public privilege and not a property right") (citing *State ex rel. Trago v. Evans*, 166 Ohio St. 269, 141 N.E.2d 665 (1957)).

Dillaplain suggests that he is not arguing that he holds a protected interest in his public office. Dillaplain also concedes that he still holds his public office. Instead, Dillaplain attempts to create a distinction between merely holding public office and carrying out the functions of that office. In doing so, Dillaplain states that Defendants' conduct deprived him of his ability to "actually carry out the functions that the citizens of Xenia elected him to carry out while serving that public office without being defamed and humiliated[.]" The Court finds no appreciable distinction between holding a public office and the ability to carry out the functions of the office, and Dillaplain cites no authority for such a distinction. Based on the foregoing authorities, the Court concludes that Dillaplain holds no property right in his elected position or in his ability to carry out the functions of that position.

Next, Dillaplain's allegations suggest that Defendants' actions impaired his ability to earn a living as a physician. As noted by a court in this district, "[t]he Fourteenth Amendment's procedural protection of property is a safeguard of the security of interests that a person has already acquired." *Myers v. Delaware Cnty, Ohio*, No. 2:07-cv-844, 2008 WL 4862512, *5 (S.D. Ohio Nov. 7, 2008) (quoting *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701 (1972)). Because the Complaint and its attachments establish that Dillaplain was not practicing as a physician at the time of Defendants' alleged

12

conduct, and because the allegations set forth no assertions that he lost existing business, Dillaplain fails to sufficiently allege a property right in this regard.

Finally, Dillaplain argues in his opposition to Defendants' Motion that he possesses a protected property interest in an open meeting under Ohio's Open Meetings Act, Ohio Rev. Code § 121.22. Dillaplain's argument in this regard is akin to arguing that he possessed a right to a hearing before being deprived of his right to a hearing. *See Callaway v. Hafeman*, 628 F.Supp. 1478, 1487 (W.D. Wisc. 1986) (noting "the absurdity of constitutionalizing state procedures" and concluding that Wisconsin's Open Meetings Law "is purely procedural and grants no substantive rights protected by the due process clause").

It is not clear whether the Ohio Open Meetings Act, itself, confers substantive rights to Dillaplain. The Court doubts such a proposition and notes generally that a "[v]iolation of a state's formal procedure . . . does not in and of itself implicate constitutional due process concerns." *Brody v. City of Mason*, 250 F.3d 432, 436 (6th Cir. 2001) (citations omitted). Dillaplain cites no Ohio authority for the proposition that Ohio's Open Meeting Act confers substantive property rights for purposes of the Fourteenth Amendment due process clause. Even assuming Dillaplain possesses a substantive property right in an open meeting for the purposes of Fourteenth Amendment procedural due process purposes, such a right is not firmly established, entitling Defendants to qualified immunity on any such claim.

Accordingly, Dillaplain's procedural due process claims must be **DISMISSED**.

C.

Dillaplain also alleges a substantive due process violation under the Fourteenth Amendment.  Generally, Dillaplain's alleges that Defendants violated his substantive due process rights when they acted with "the express intent . . . to inhibit [his] discussion and participation as a Board member."  (Doc. 6, PAGEID 80).  The Court finds such allegations duplicative of Dillaplain's First Amendment relation claim and **DISMISSES** it accordingly.  *Brandenburg v. Hous. Auth. Of Irvine*, 253 F.3d 891, 899-900 (6th Cir. 2001) (granting judgment as a matter of law on a purported substantive due process claim where it was "duplicative of [plaintiff's] First Amendment retaliation claim").

D.

Dillaplain's remaining claims all assert state causes of action, including claims that Defendants violated the Ohio Open Meetings Act.  In civil cases where district courts possess original jurisdiction, "the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy[.]"  28 U.S.C. § 1367(a)(3).  District courts may, however "decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction[.]"  28 U.S.C. § 1367(c).  "In determining whether to retain jurisdiction over state-law claims, a district court should consider and weigh several factors, including the 'values of judicial economy, convenience, fairness, and comity.'"  *Gamel v. City of Cincinnati*, 625 F.3d 949, 951-52 (6th Cir. 2010) (citations omitted).

14

In cases where the district court dismisses the federal claims "before trial, the balance of considerations usually will point to dismissing the state law claims, or remanding them to state court if the action was removed." *Id*. at 952 (citing *Musson Theatrical, Inc. v. Fed. Exp. Corp.*, 89 F.3d 1244, 1254-1255 (6th Cir.1996); 28 U.S.C. § 1367(c)(3)); *see also Gamel v. City of Cincinnati*, No. 1:10cv15, 2010 WL 2179669, at *2 (S.D. Ohio May 28, 2010) (stating that "the dismissal of federal law claims in the early stages of a lawsuit will normally cause the District Court to decline to continue to exercise supplemental jurisdiction over the state law claims").

Here, there are no unique circumstances favoring the exercise of supplemental jurisdiction over Plaintiff's state law claims. Accordingly, the Court **DECLINES** to exercise supplemental jurisdiction over Plaintiff's state law claims.

## IV. CONCLUSION

Accordingly, for the foregoing reasons, the Court **GRANTS** Defendants' Motion to Dismiss and **DISMISSES** Counts One, Two and portions of Count Four, as detailed above, **WITH PREJUDICE**. (Doc. 7). The Court **DECLINES** to exercise supplemental jurisdiction over Plaintiff's remaining claims, and therefore, those claims are **DISMISSED WITHOUT PREJUDICE**. The Clerk shall enter judgment accordingly and terminate this case on the Court's docket.

**IT IS SO ORDERED.**

Date: 10/21/13                        *s/ Timothy S. Black*
                                       Timothy S. Black
                                       United States District Judge

15